when you're ready. Good morning, Your Honors. It's still morning, yes. May it please the Court, I'm Mark Zilversmith for Petitioner Napoleon Brown. And with the Court's consent, I'd like to focus on the Griffin issue, and particularly the prejudice to the gun enhancement. This is, of course, a very strange procedural situation in which neither the State Court nor the District Court have adopted the position of the people in this case. Well, isn't it true that in order to grant relief in a habeas case, we have to find that there was a constitutional violation? After 20 — if 2454 — 2254 backs out, we still have to decide whether there was a constitutional violation. There is a constitutional violation. Well, our case law says definitively there wasn't. So why isn't that the end of the story? Your case law says definitively there was no constitutional violation. It's under Miranda, under Salinas, under Malloy v. Hogan. There was an under the State Court's own decision, they found a constitutional violation because the monk — So what? I mean, I don't understand what difference that makes. How do we grant a habeas at that point? If our case law says no. Your case law doesn't say no. Okay. I see what you're saying, Your Honor. I'm sorry I misunderstood you. What your case law says is that pre-Miranda silence may or may not be a constitutional violation. And that was actually decided in Salinas v. Texas by the U.S. Supreme Court. But this is not a — That's what the Supreme Court says. But we say, in cases coming out of Federal court, that it's not a constitutional violation. No, I would — with all due respect, I would disagree. Because what the — the Attorney General has framed this in a way that I believe is confusing. The issue is, there is an invocation of the right to counsel and the right to remain silent in this case. Okay. That is found in his accorded deference under 2254D because the State Court found an invocation by counsel and by the defendant's sister to the police saying that he's not going to talk to you upon his right of counsel and his right of silence. So we have an invocation in this case. There's no case in this court or in any other court that says once you have explicitly invoked your right to remain silent, that that can be used against you. And if that can be used against you, our whole system will collapse. Because then you're in a position — you're found at a crime scene. The police come up to you and say, what do you know about this? You say, I would like to invoke my right to silence, as the Court says under ‑‑ Kagan. I agree that I have some problem with our case law, but it seems to be exactly about these issues. Well, I would distinguish it, Your Honor, because in all the cases cited by the people, there was no invocation of the right to remain silent. If my client had stayed at home and had never said, I'm invoking my right to silence, as the State Court found that he did, then I would have a problem. But I don't have that problem, because as the State Court found explicitly, he did not come in because he told the police through his sister and through his attorney, who spoke to the police, and said, I can't let him talk to you. So that's a finding that the State Court, that the people never acknowledge. That's an explicit factual finding by the Court of Appeal of the State of California. And that distinguishes every case that the people have cited to you. There's not one case in there where a defendant said, I'm invoking my right to remain silent, and the Court has said, oh, it's still fine to say that that proves you're guilty. That would destroy the entire system. That would go back to the nemotenitor principle upon which the Fifth Amendment was found. So that is extremely clearly defined by the U.S. Supreme Court. In Salinas, in Miranda, in Malloy v. Hogan, all the cases I cited in my brief, I mean, look, in Malloy v. Hogan, the Court said, the Fifth Amendment guarantees against federal infringement the right of a person to remain silent unless he chooses to speak in an unfettered exercise of his own will, and to suffer no penalty for such silence. And in Miranda, they said, use of the fact at trial, the fact that he claimed his privilege in the face of accusation, may not, the prosecution may not use that. So that's the exact same thing. It seems to me that the Oplinger opinion, which is kind of a good one, does not, in no way turns on whether he's invoked or hasn't invoked his right to silence. What it holds is that you have no right to silence at that point. That's what it holds. I mean, you can disagree with it strongly, and I understand why you do, but that's what it holds. I would disagree with you, and I would disagree that it holds that, and I would disagree that it could hold that after the more recent case of Salinas v. Texas. The Court in Salinas v. Texas said, if you want to rely upon your privilege against self-incrimination, what you do is you tell the police, I want to rely on my privilege against self-incrimination, which is exactly what Mr. Brown did. He had his sister call, and he had his attorney call and say he was in custody and had a right to not speak. I mean, I don't understand. If you look at Mr. Salinas' case, Mr. Salinas was asked to come to the police station voluntarily. That is very clear. The police let him go after he talked to them. And he answered a bunch of questions, and they asked him about a gun, and then he didn't respond to that. And they said his silence in the face of that voluntary police encounter about the gun was proof he was guilty. This is quite different, because what Salinas said is that Mr. Salinas, if he wanted to rely on that privilege, would have to tell the police, I don't want to answer that question because I would like to remain silent and rely on my Fifth Amendment privilege. That's exactly what Mr. Brown did. And that's why the California Court of Appeals said that there was a constitutional violation. So no court has adopted the State's position in this case. What do we do with, I mean, this is, we don't usually see a case in this posture. What do we do if we conclude that the California Court of Appeals overread the protection provided by the Fifth Amendment and mistakenly concluded under Federal law that the right to remain silent applied here in the, in this early stage? Do we independently determine what we think is Federal law, or are we required to defer to what the California court thought was the law? I think you defer to the court. On the question of the Federal law. That's why I began where I began. How do we defer to the court when ultimately we can only grant habeas if there was a constitutional violation? Well, first of all. We may defer to the court for 2254 purposes so that 2254 doesn't apply, but then we're back to the de novo question, was there, can we grant relief because there's a constitutional violation? In their, their, so would Your Honor, is Your Honor saying that if I go and a police, I'm in a crime scene. No, I'm trying to deal with the question, to have you deal with the question that Judge Fletcher just asked. Yes. In other words, what is the significance of what the State court did here? Let's leave the merits aside. What the State court did here, let's assume for purposes of this that our law is, as I say it is, that you, there is no violation here. And the State says there is a violation here. Okay. Where does that leave us as a court with regard to habeas? Well, ordinarily under 2254, it's a deference situation. Okay. So I would say defer to it. Therefore, they, they, they didn't violate, they, they didn't do something that was contrary to California law, et cetera. So now we're back to the question of do we grant relief? Well, the, and also the question is not the Ninth Circuit law, it's the United States Supreme Court law. And I, I, is the court asserting to me that the law, if you are at a crime scene and the police approach you and you say I, I invoke my right to remain silent. Is there any clearly established Supreme Court law saying that? There are, there is several clearly established Supreme Court laws. I thought they specifically said they haven't decided that. Excuse me? I thought the Supreme Court specifically has not decided that. No, that, that's not true. The Supreme Court, I cited a quote, and I just quoted to you from Malloy v. Hogan. I just quoted to you from Miranda v. Arizona. In Wainwright v. Greenfield, they also said that. In United States v. Jackson, they also said that. In the Fourth Amendment context, they said in Camargo v. Municipal Court, in D.C. v. Little. So this has been repeatedly decided, and in Griffin itself, that you cannot penalize the assertion of a right. So if I, if sitting in a crime scene and a police officer says what do you know about this dead body, I'm not in custody, and I say I'd like to rely on my right to counsel and to remain silent and discuss that in the presence of counsel, there's you're at the limit here. Let's hear from the other side, and then we will give you a chance to respond. Thank you, Your Honors. Good morning, Your Honors. Jill Thayer on behalf of the Attorney General. I wasn't planning on discussing this. I was actually planning on getting to harmless error, but I'm perfectly happy to talk about 2254, because I do agree with where this Court is headed, which is that I'm sorry. Or me, anyway. Or perhaps, perhaps. Under the State, under 2254, the State court's adjudication has to result in a decision. The decision as a whole that's contrary to or objectively reasonable application of clearly established Supreme Court law. And notwithstanding the State court's decision, it'll be difficult for this Court to say that it's objectively unreasonable when, and we disagree, it is not clearly established by the U.S. Supreme Court. But I, my question is really something else. Let's suppose we concluded that 2254d actually doesn't apply here, because the State court's decision to not result in a decision that was contrary to or involved in unreasonable application of clearly established Supreme Court law, I mean, it's not unreasonable to think that this is the law, but then, so then 2254d goes away, but we still have to decide whether there's a constitutional violation here. Anderson-Cooper, Jr. Correct. And then under the other case law, there isn't. Anderson-Cooper, Jr. Correct. Now, Mr. Your opponent says otherwise. He says I'm misreading our case law. Anderson-Cooper, Jr. Now, this Court's case law is clear. And there is a split in authority, and there are good decisions, reasons to decide either way on the use of pre-Miranda silence. Now, what this Court did, and they went into more detail in Opplinger, but in Opplinger, what this Court did is it went back to the Fifth Amendment, which is where all of this comes from, and the Fifth Amendment says no person shall be compelled to be a witness against himself. So Opplinger looked at Jenkins, and it specifically looked at Justice Stevens' concurring opinion in Jenkins that said if there's no custody, if there's no compulsion at all by the government, the Fifth Amendment is not implicated. That's where this Court, and then you stop. Then you stop right there. You say the government did not compel this, and therefore, there's no compulsion under the Fifth Amendment, and then it is admissible. That's what this Court said in Opplinger. And then in Beckman, I mean, the quote, and I quoted it in my brief, but it's very solid that it says use of a defendant's pre-arrest, pre-Miranda silence is admissible as impeachment, and the U.S. Supreme Court has said admissible as impeachment, but this Court has gone on to say and as substantive evidence of guilt. And there are arguments on either side, but this Court has gone one way, and it would be very difficult to say, well, right, under the DeNovo review, if 2254D slides out, then under DeNovo review, then the State prevails. And also, I would agree when you look at Richter, the language in Richter saying 2254 guards against extreme malfunctions in a State's criminal justice system. And so you just you can't say it's an extreme malfunction when if this case were in front of this Court on direct review, this Court would not reverse. Ginsburg. If we got to the harm's error question, I your briefs agreed that we should do Brecht. I think you then sent us a 28-J letter, but it doesn't matter, right? I mean, we should apply Brecht. Correct. The 28-J letter, I would just want this Court to have the most recent opinion, because it was a big U.S. opinion. Very confusing opinion. And it, but it said exactly what we said in our briefs. I think it's right. So therefore, it's Brecht that applies. It is Brecht. And Brecht, just to get into Brecht a little bit, Brecht is an extremely difficult error to prove. Go ahead. Brecht is what it is. Yes. We see a lot of harmful errors under Brecht. So extremely difficult or not, Brecht is Brecht. It's a high standard, though. I just wanted to correct some statements in the reply brief about saying Brecht is similar to trial error, not constitutional error, but statutory error. And that is just not correct. Under Brecht, there has to be a showing that the error, it produced actual prejudice. Under Chapman and under trial error, you know, there's kind of this, you have to almost prove that the error didn't cause harm. In Brecht, you actually have to show there's actual prejudice. And in this case, and I didn't focus on this in my brief, and I should have, but really the big crime in this case was the murder. And so there was murder, robbery, carjacking, it was this whole series of events. And the petitioner's defense at trial was alibi. And his silence tended to show that he didn't have an alibi. Because what happens is you have to look at, well, what was the error and what did the silence show? Like in Jenkins, he didn't come up to the police for two weeks, and then he came up and he said, oh, it was self-defense. Or, and so the question is, well, gee, why didn't you come to the police two weeks earlier and say, I killed this guy in self-defense? You have to look at what the defense is, and then the prosecution uses the silence to say, if that was your excuse, then why didn't you tell us earlier? Well, in this case, the defense is alibi. And there's just so much evidence that he was there, the DNA evidence, the witness identification. The basic point is that as to the question of whether he was there, there's a great deal of evidence. And as to the enhancements, where there was perhaps less evidence, this question of whether he had some awareness of guilt doesn't really go to the enhancement. Exactly. The fact that he didn't go to the police station didn't prove that he was the guy with a gun. I mean, if all you show at a trial is this person didn't go to the police department, they're not convicted. There has to be lots of other evidence to show what the actual crimes were, enhancements, and so forth. And the arguments, it was argued several times at the trial that him not going to the police station was evidence of the crime, but of what was it said to be evidence of, just that he was actually there? Is that what it was? Well, the idea is, gee, if he had this alibi, why didn't he just come and tell us about the alibi? But there was no connection in the arguments, was there? Or was there a connection in the arguments to the enhancements? No. No, there was no connection. It was just, it was one of, a part of one of 40 points. And then the other part was, gee, if he was so innocent, why did he try to climb out the window when he was arrested? And I'd like to also point out in the reply, I saw that he said, well, maybe he tried to climb out the window when he was arrested because there were drugs at the scene. Well, in the transcript, and it's not in the records themselves, but it's at the transcript, Ms. Harris's testimony was at RT, like 32, 31, and so forth. But basically, she had heroin in her purse. And there were eight people in that room. And three, Ms. Harris, another person, and Petitioner were all arrested. But the five other people were not. And so the idea is consciousness of guilt from the trying to climb out the window. The argument that, no, maybe he was trying to climb out the window because there were drugs there. Well, the drugs were in her purse, and she admitted that they were hers. And she admitted also that she was selling drugs, although she did not – she eventually pled to possession for sales with those drugs. So in other words, he didn't climb out the window because Ms. Harris had drugs in her purse. All right. Thank you. Roberts. Thank you. Let's put a minute on the clock. Thank you, Your Honor. In this court – this Court decided the tax case, which I cite on page 6 of the reply, and the Prescott case, cited on page 6 of the reply. Those cases both hold that when you invoke a right, in that case it's a Fourth Amendment right. You can't use the invocation of a privilege to prove guilt. And that is the issue that's not decided in Opplinger. And that's the issue that after Opplinger, the U.S. Supreme Court decided Salinas. And they said, if you are voluntarily not in custody and the police want to talk to you, you must invoke your right in order to claim that privilege. And that is exactly what Mr. Brown did. He wasn't in custody. He invoked his right through his attorney and through his sister. And if the Court holds as a matter of constitutional law that that can be used against you, I frankly – that's a gross extension and erosion of the Fifth Amendment privilege. And the Supreme Court has repeatedly – when it held what it held – cited Opplinger as being to the contrary. And in my case, they did, yes. But they cited it in the California Supreme Court? Yes. Yeah. In the Tom case? No, in this case. In this case, the California Supreme Court never reviewed it. I don't mean that. I mean the California Court of Appeals. In this case. In this case, when it set out its view on the issue, it said the Ninth Circuit law was to the contrary. They cited it as a – on the issue of silence. But this is an issue of invocation. They cited it on the issue of whatever they were deciding. They cited it, yes. They said they viewed what they were deciding as being an invocation. They said that. It's – it's – it is on an issue that is not the issue before the Court. The issue before the Court is once you have a factual finding of an invocation of the right, can the prosecutor go in there and say he invoked his right to silence, therefore he's guilty? That's the issue. And that was also – this was before Salinas v. Texas. The Supreme Court just said last year what you have to do is invoke your right to silence to invoke that protection. And that's what Mr. Brown did in this case. It would be a gross erosion of the Fifth Amendment if you could then use the fact that you invoked your right to silence against you in a court of law to prove your guilt. Okay. Thank you. Thank you very much. Thank you, Your Honor. If the Court needs anything further, I'm happy to provide further briefing. Yeah. If we want further briefing, we will alert you by order. I understand. Thank you. Brown v. Attorney General now submitted for decision.
judges: W. Fletcher, Berzon, Bea